J-S92028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.M., FATHER | No. 1041 WDA 2016 |

Appeal from the Order June 13, 2016
In the Court of Common Pleas of Beaver County
Juvenile Division at No(s): CP-4-DP-0000047-2015, NO. 117-2015

BEFORE: SHOGAN, J., MOULTON, J., and STRASSBURGER, J.[*]

MEMORANDUM BY MOULTON, J.:                    **FILED JANUARY 17, 2017**

L.M. ("Father") appeals from the June 13, 2016 decree entered in the Beaver County Court of Common Pleas terminating his parental rights to A.M. ("Child"), born in May 2013. We affirm.

Since shortly after Child's birth, Children and Youth Services ("CYS") had an active case regarding Child due to Mother's addiction to Vicodin and Father's homelessness. On May 29, 2014, CYS filed an emergency motion for protective custody of Child in Allegheny County. On May 30, 2014, Child was ordered to remain at the Families United ("FUN") foster home, and on June 2, 2014, Child was adjudicated dependent as to Mother. Because

---

[*] Retired Senior Judge assigned to the Superior Court.

neither parent was capable of caring for Child, Child was placed with Mother's aunt, M.E., and her partner, K.V.

At the June 16, 2014 dependency hearing, Father, who was represented by counsel, failed to appear, and Child was adjudicated dependent as to Father.[1] The trial court found that Father's criminal history included 10 years' incarceration for involuntary deviate sexual intercourse and corruption of a minor. Father was classified as a Megan's Law offender and was required to attend sexual offender treatment to properly care for Child. Furthermore, the trial court found that Father had tested positive for tetrahydrocannabinol ("THC") on June 2, 2014. At the conclusion of the hearing, the trial court ordered Father to: become clean and sober; attend a drug and alcohol evaluation and recommended treatment and screenings; attend supervised visitations with Child once per week; attend sexual offender treatment; and obtain safe and appropriate housing.

At the October 27, 2014 permanency review hearing, the trial court found that Father had voluntarily reduced his visits with Child to one hour per week, continued to refuse sexual offender treatment, and tested positive for THC. The next hearing was held on January 16, 2015, which Father did not attend. The trial court found no compliance with the permanency plan

_____

[1] Although generally a child is adjudicated dependent as to both parents at the same hearing, the trial court adjudicated child dependent as to Mother on June 2, 2014 based on a stipulation and deferred Father's contested adjudicatory hearing until June 16, 2014.

and found that Father had not attended visits with Child since November 24, 2014. The next hearing was on April 10, 2015, which Father did attend. The trial court again found no compliance and asked Father why he was not addressing his goals. Father responded that he had "no time to run around."

On August 24, 2015, the case was transferred to Beaver County because Mother had moved. On October 13, 2015, a permanency review hearing was held, which Father did not attend. Because Mother was making progress, the trial court reunified Child and Mother on this date. Three other permanency review hearings were held, none of which Father attended. On April 4, 2016, CYS filed a motion requesting Child be returned to foster care, because Mother had relapsed to drug and alcohol abuse, struggled with mental health issues, and was homeless. The trial court granted the motion.

On May 3, 2016, the trial court held a permanency review and goal change hearing. This was the first hearing in Beaver County that Father attended. The trial court explained to Father that the matter was urgent because Child had been in placement for 17 of the last 22 months. The trial court continued the case until June 13, 2016 so that Father had time to complete his parenting evaluation and obtain a lawyer. At the June 13, 2016 hearing, the trial court made the following findings:

> Father was provided the family service plan from Beaver County in February 2016. [It was substantially the same plan as the plan from Allegheny County.] He was informed numerous times of his right to counsel, but never completed an application to have a lawyer appointed until May 2016, the first time he appeared in court. From the inception of the case, both in Allegheny and Beaver

County, Father resisted any involvement from CYS, and refused to attend any evaluations or services.

Among the tasks Father was to complete in the Family Service Plan were a parenting evaluation and sexual offender treatment. The parenting evaluation was part of the Family Service Plan since August 2015. Father never attended the evaluation and the initial referral was closed. The referral for a parenting evaluation was made again in May 2016, and the evaluation was scheduled for Father on two separate occasions. The case worker attributed the first missed appointment to a miscommunication, because when she went to pick up Father following the visit with the child, he was not there. He had gone home. Apparently, he claimed that he did not know whether he had a ride to the appointment, although the parenting evaluator confirmed with him the day before that she would be seeing him. The second appointment was cancelled because Father overslept. The appointment was scheduled for 12:30 p.m. and he was to be picked up in Monaca at 12:15 p.m. Father never called CYS or the evaluator to explain why he wasn't there on time.

Parenting evaluations can take months to schedule. In this case, accommodations were made for Father to have two opportunities, in a very quick timeframe, to be able to complete the evaluation prior to the hearing, and he missed them both.

It was expected that the parenting evaluation would reveal other services that might be necessary for the parents to complete. It is a well-rounded evaluation that talks about how the parent was raised as a child, marital history, drug and alcohol use[,] me[n]tal health, criminal history, etc. At the time of the hearing, however, Father still had not completed the parenting evaluation.

Father was offered eight visits with [Child] since the last time he appeared in court on May 3, 2016. He missed five visits and attended three.

Father claimed that he was not involved with the minor throughout the case because he was homeless for several months. Father was homeless for approximately the first 9 months of this case, at which time he lived in his car. However, he admitted that he was back on his feet for the

- 4 -

past year, and still did not visit regularly or attend services. He has never had [Child] in his care, and for the past year, at least, has not had her at his home, even for a visit, unless Mother took her there during the brief period of reunification.

*See* 1925(a) Opinion, 9/1/16, at 5-7 ("1925(a) Op.") (unpaginated) (internal citations and footnotes omitted).

On July 13, 2016, Father timely filed a notice of appeal. Father raises the following issue:

Whether the trial court abused its discretion and/or erred as a matter of law in determining that the agency, [CYS], established by clear and convincing evidence that the parental rights of [Father] should be terminated pursuant to 23 Pa.C.S.A. § 2511?

Father's Br. at 4.

We review a trial court's order terminating parental rights for an abuse of discretion. *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). An abuse of discretion "does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* (internal citations omitted).

The Pennsylvania Supreme Court has explained the reason for applying a particularly deferential standard to termination decisions:

[U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even

> where the facts could support an opposite result, as is
> often the case in dependency and termination cases, an
> appellate court must resist the urge to second guess the
> trial court and impose its own credibility determinations
> and judgment; instead we must defer to the trial judges so
> long as the factual findings are supported by the record
> and the court's legal conclusions are not the result of an
> error of law or an abuse of discretion.

*Id.* at 826-27 (internal citations omitted). At the same time, "[t]he burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so." *In re Z.P.*, 994 A.2d 1108, 1116 (Pa.Super. 2010).

Termination of parental rights is governed by section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party
> seeking termination must prove by clear and convincing
> evidence that the parent's conduct satisfies the statutory
> grounds for termination delineated in Section 2511(a). Only if
> the court determines that the parent's conduct warrants
> termination of his or her parental rights does the court engage in
> the second part of the analysis pursuant to Section 2511(b):
> determination of the needs and welfare of the child under the
> standard of best interests of the child. One major aspect of the
> needs and welfare analysis concerns the nature and status of the
> emotional bond between parent and child, with close attention
> paid to the effect on the child of permanently severing any such
> bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

The trial court found two grounds for termination of Father's parental rights, 23 Pa.C.S. §§ 2511(a)(2) and (8). However, we need only agree with the trial court's determination as to one subsection of section 2511(a) in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en*

- 6 -

*banc*). Thus, we will analyze the trial court's decision to terminate under section 2511(a)(2), which provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. §§ 2511(a)(2). To terminate parental rights pursuant to section 2511(a)(2),

> the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for [her] physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015) (quoting

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003)).

Father contends that CYS did not present clear and convincing evidence to meet the elements for section 2511(a)(2). Father's Br. at 9. Father does not dispute that he failed to comply with the Family Service Plan; rather, he argues that he is **now** willing to comply. *Id.* at 9-10. Father maintains that his failure to attend scheduled supervised visits was based on travel demands occasioned by the distance he lived from the

- 7 -

visitation site. *Id.* at 10. He further suggests that Child could live in his home with his two other children. *Id.* Finally, Father maintains that CYS has not proven that he is unwilling to remedy his neglect. *Id.*

In its opinion, the trial court set forth its reasoning for finding grounds for termination under section 2511(a)(2):

> [F]rom the inception of this case . . . Father outright refused to attend sexual offenders' treatment. He believed the treatment was irrelevant and that he did not need to attend. He was informed at the time of the adjudication hearing, in June 2014, that his treatment was necessary. As of the final hearing on June 13, 2016, two years later, he had not begun treatment. His refusal to follow the family service plan has left [Child] without essential parental control necessary for her well-being. The court cannot place this child with Father, who has a conviction for involuntary deviant sexual intercourse with a minor, before he completes this treatment. For more than two years, the cause of the neglect or refusal to attend treatment was not be [sic] remedied by Father, and the court has no indication, other than Father's last minute promise to attend, that he will ever complete the treatment for necessary reunification.

1925(a) Op. at 8-9 (internal citation omitted). In addition, Father failed to attend the parenting evaluation, even though it was scheduled on more than one occasion and he was provided transportation. *Id.* at 5-6. We conclude that the trial court did not abuse its discretion when it found that section 2511(a)(2) warrants termination of Father's parental rights.[2]

---

[2] We acknowledge that distance was an issue for Father; however, that was merely one factor in the trial court's determination. In terminating
*(Footnote Continued Next Page)*

We next turn to section 2511(b), which we have described as follows:

Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*C.D.R.*, 111 A.3d at 1219 (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011)) (citations and internal quotations omitted).

Father claims that CYS failed to present clear and convincing evidence regarding the emotional bond between Father and Child and the effect of permanently severing the parental bond. Father's Br. at 11. Father states that he did not obtain counsel until May 2016 and did not have adequate time to review his case with counsel prior to the termination hearing. *Id.*

---

*(Footnote Continued)* ————————————

Father's parental rights, the trial court focused primarily on Father's failure to complete the parenting evaluation and the sexual offender treatment.

Father contends that after consulting with counsel, he made a reasonable request for time to comply with CYS and the Family Service Plan. *Id.*

The trial court considered the developmental, physical, and emotional needs and welfare of the child. The trial court found that it could not entrust Child with Father without the required evaluation and treatment. 1925(a) Op. at 10. It further stated that Father had not been involved in Child's life and resisted any services for two years. *Id.* The trial court found that it was not in Child's best interest to remain without a permanent home, that Father had neglected his parental duties, and that termination of parental rights was appropriate to serve the needs of Child and provide permanency. *Id.* at 9-10; Involuntary Termination of Parental Rights Decree, 6/13/16.

Contrary to Father's contentions, the trial court did consider the effect on severing the parental bond, if any existed. The trial court stated, "[Father] has done very little to foster [a] relationship. From the very beginning of the case, he voluntarily reduced his visits to once a week for one hour." 1925(a) Op. at 7. The trial court went on to explain how Father's constant refusal to attend the parenting evaluation and sexual offender treatment indicated he was not taking the necessary steps for Child to be placed in his care. *Id.* at 9-10. Finally, the trial court stated that "[Father's] bond with his daughter is not a strong one, due to his lack of visits. Severing the bond at this point will not have a negative impact on the child." *Id.* at 7.

As the trial court observed, Father had multiple opportunities to retain counsel and chose to wait until May of 2016 to do so. His conscious decision not to complete the parenting evaluation or sexual offender treatment for two years led to the termination of his parental rights. Father argues that all he is asking for is one opportunity to remain in his daughter's life, Father's Br. at 12, but he fails to acknowledge that he has been given, and squandered, many such opportunities. "[A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity of availability of services, may properly be rejected as untimely or disingenuous." *In re A.L.D.*, 797 A.2d 326, 340 (Pa.Super. 2002). Child has been in placement for most of her life, and we agree with the trial court that she should not be left to linger until Father decides that this time he will truly comply. Child deserves permanency in a family that can provide her with the care and attention she needs.

We conclude the trial court did not abuse its discretion in finding termination of Father's parental rights would best serve Child's developmental, physical, and emotional needs and welfare.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/17/2017</u>